# Powers v. Heil Environmental Industries Ltd.

*Gerald B. Baldino* and *Heather A. Herrington,* for appellant.

*William J. Carr Jr.* and *John J. Snyder,* for appellee Heil Environmental Industries.

*Walter J. Timby III,* for appellee Mid Atlantic Waste Systems.

PANEPINTO, *J.,* June 11, 2010—

## PROCEDURAL HISTORY

Appellant, Julie Powers, administratrix of the estate of Steven G. Powers, dec'd. filed an appeal from this court's order of December 7, 2009, denying appellant's post-trial motion for a new trial.

This strict product liability action was brought by appellant for damages resulting from the death of appellant/decedent. Appellant/decedent's death arose when appel-

lant/decedent jumped off the back of a trash truck, striking his head on the ground, which ultimately resulted in his death. At the time of the accident, appellant/decedent was employed as a trash truck collector with Upper Chichester Township.

Appellant filed suit against appellees alleging that decedent's death was caused as the result of the negligence of appellees as well as under the theory of strict products liability. Prior to trial, appellants had withdrawn their negligence claims and were proceeding solely under the theory that appellee's trash truck was defectively designed under a theory of strict products liability.

Prior to trial, this court heard argument on numerous motions in limine, most notably appellant's contention that appellees should not be able to proceed under the defense of assumption of the risk. This court ruled that based upon the evidence that would be presented at trial, appellees could proceed during trial with the theory that appellant/decedent voluntarily assumed the risk.

Trial in this matter began on June 16, 2009 and concluded with a jury verdict in favor of appellee on June 26, 2009. The testimony at trial was hotly contested between the parties, especially during the testimony of the two employees who were working with decedent on the trash truck on the day of the accident. These two co-employees were James Myers, who was operating the trash truck at the time of decedent's death, and Gary Beam, who was standing on the back of the trash truck with decedent just prior to both Mr. Beam and decedent jumping from the truck resulting in decedent's ultimate death.

On the day of the accident, appellant/decedent was working as part of a three-man team on the Formula 4000

trash truck manufactured by appellee, The Heil Company. The truck was equipped with a step on both rear side portions of the truck for the men to stand on while the truck was in motion. On the date of the accident, appellant/decedent was standing on a "roll bar" on the back of the truck. During trial, appellants put forth evidence that this "roll bar" was used by the men, including appellant/decedent as a means to stand on the truck while the truck was in motion since, according to appellants' theory, the men perceived it to be safer than standing on the side steps as described earlier. Appellants argued that the placement of a cylinder piston near the side step precluded workers such as appellant/decedent from squeezing close enough to the truck while in motion in order to avoid being struck by something on the side of the truck.

Appellee argued during trial that there was a notice on the truck warning workers that if the truck was moving in excess of 10 miles per hour or was going to travel more than two-tenths of a mile, all members of the team should be driving in the cab of the truck itself rather than standing on the side step. On the day in question, appellant/decedent and his co-worker, Gary Beam, were riding on the "roll bar" on the back of the truck when a flash fire broke out in the truck's hopper (rear trash bin). Both appellant/decedent and his co-worker, Mr. Beam, jumped off the back of the truck to avoid the fire. Mr. Beam fell and injured his arm. Unfortunately, appellant/decedent struck his head on the ground, which ultimately led to his death.

During trial it was consistently argued by appellants' counsel that appellees, through their counsel, were attempting to inject negligence theories into this strict

product liability case. It was appellees' contention during trial that some evidence regarding the negligence of the decedent and the operator of the trash truck were needed even in the strict liability case so as to prove causation which must be proven even in a strict liability case. In addition, appellees argued during trial that appellants were in effect opening the door to negligence issues by the very evidence that they were putting forth in their case in chief.

Following the close of the case, the jury returned a verdict for the appellees finding that neither the truck nor its component parts were defectively designed, and that the trash truck or its component parts lacked adequate warnings or instructions to make the product safe for its intended use. On July 6, 2009, appellant filed post-trial motions requesting a new trial. Following briefs that were submitted by the parties, this court entered an order on December 7, 2009 denying appellants' post-trial motions. On December 10, 2009, appellants timely filed their appeal of this court's order of December 7, 2009. On January 8, 2010, this court ordered that pursuant to Pa.R.A.P. 1925(b), appellant file and serve on this trial judge a statement of matters complained of on appeal. On January 25, 2010, appellant timely filed her concise statement of matters complained of on appeal.

## ANALYSIS

Appellant, in her concise statement of matters complained of on appeal, set forth 10 statements of matters complained of on appeal, some of which include sub-issues. Each of the 10 errors will be discussed separately.

### 1. The Court Erred When It Refused To Grant Plaintiff's Motion in Limine To Preclude the Defense of Assumption of the Risk and in Permitting the Introduction of Evidence Pertaining to This Defense Throughout the Trial

Prior to trial, appellant filed with this court a motion in limine to preclude evidence regarding the defense of assumption of the risk. At that time, appellee argued that there was a notice contained on the subject trash truck warning individuals such as appellant/decedent that workers needed to be in the cab of the truck when it was traveling in excess of 10 miles per hour or travelling in excess of two-tenths of one mile. Further, appellants argued that during trial, they produced evidence that the "roll bar" where decedent was standing just prior to his death was not to be used by individuals such as appellant/ decedent, but instead they should have been standing on a sidestep. Based upon appellee's arguments, this court permitted the introduction of evidence pertaining to the defense of assumption of the risk.

### 2. The Court Erred When It Permitted the Defense To Introduce Evidence Regarding the Alleged Negligence of Various Actors in This Case, As Follows

(a) The court erred in allowing cross-examination of plaintiff's expert, Byron Bloch, regarding statements and opinions made by Bruce Johnson that workers should not ride on the rear of the truck since this line of questioning suggested comparative negligence, which should not have been admitted in this strict products liability action.

(b) The court erred by allowing questioning of witness Gary Beam regarding plaintiff's status as a member of the safety committee, thus suggesting an element of knowledge and comparative negligence on the part of plaintiff's decedent.

(c) The court erred by allowing questioning of and answers by witness James Myers regarding his duties, as the operator of the subject vehicle, to operate the vehicle in a safe manner, thus suggesting negligence on his part.

(d) The court erred in permitting testimony by Mr. Bloch in violation of the court's own pretrial orders regarding the alleged inadequate training of plaintiff and his knowledge of the dangers associated with the product.

(e) The court erred by allowing publication to the jury of defense exhibit D-4h (referred to at trial as exhibit 1858), which included warnings suggesting that users of the product are obligated to read and understand the operator's manual (reference to the operator's manual was precluded by order in limine), and labels suggesting that the operator (driver) of the truck is responsible for safe use of the vehicle (contrary to the order in limine that precluded reference to the negligence or obligations of co-workers).

(f) The court erred by allowing questioning of witnesses, including Gary Beam, Byron Bloch and James Myers, regarding the obligations, responsibilities, and training of the decedent's co-workers, which suggested negligence on the part of decedent's employer.

Initially, appellants argued that this court erred in the line of cross-examination of plaintiff's expert, Mr. Bloch,

regarding workers standing on the rear of the truck since this line of questioning suggested comparative negligence. Although this court is mindful that decedent's contributory negligence is not appropriate as a strict liability action, inquiry as to appellant's use of the product is relevant as it relates to causation. In addition, evidence of appellant's conduct or misuse of a product is also admissible in a strict liability case if it is alleged that such conduct and not any product defect was the sole cause of the harm. In the case at hand, appellees were alleging that the "roll bar" being utilized by appellant/decedent on the date of the accident was not designed for workers to stand on, but rather a step on either side of the back of the truck.

Appellants also argued that this court erred by allowing the questioning of decedent's co-worker, Gary Beam, regarding decedent's status as a member of the safety committee, thus suggesting an element of knowledge and comparative negligence on the part of appellant/decedent. As stated previously throughout the course of trial, appellant, through various witnesses, was attempting to show that decedent was a very cautious and safety-oriented person. In fact, one of appellant's witnesses testified that appellant/decedent was known as the "safety guy." Therefore, this court permitted appellee to question one of these witnesses, Mr. Beam, as to decedent's status as a member of the safety committee to which Mr. Beam had testified.

Further, appellant argues that this court erred by allowing questioning of witness, James Myers, regarding his duties as the operator of the subject vehicle and his operation of the vehicle in a safe manner, thus implying negligence on his part. This court is clearly mindful that

producing evidence suggesting negligence on the part of the driver of the vehicle is impermissible in a strict products liability action. During the direct testimony of Mr. Myers, appellant's counsel questioned him about the use of the side step with regards to any potential dangers it would have to workers standing on those side steps while the trash truck was moving. Certainly appellant was attempting to elicit testimony that the side step was defective, thereby requiring employees such as appellant/decedent to utilize the "roll bar" which was situated on the rear of the truck, to stand on while the truck was in operation. Once again, it was this court's determination that once this testimony was elicited by appellant, it was certainly permissible for appellee to question this witness as to his ability to operate the vehicle in a manner so as to avoid danger to its workers, including the potential for workers such as appellant/decedent from coming in contact with things on the side of the road such as fire hydrants, trees, etc.

Appellant also complains that this court erred in permitting testimony by Mr. Bach, appellant's liability expert, with regards to alleged inadequate training of appellant/decedent and his knowledge of the dangers associated with the trash truck itself. Although this court agreed that eliciting testimony regarding the training of appellant/decedent would be inappropriate in a strict product liability case, this court determined that under theories of assumption of the risk, appellee would be permitted to inquire as to whether or not appellant/decedent was aware of the danger of standing on the back of the vehicle rather than utilizing the side steps.

Appellant also argues that this court erred in allowing exhibit D-46 to be published to the jury. This exhibit

included warnings suggesting that users of the product are obligated to read and understand the operators' manual. Once again it was this court's determination that it was fair for appellee to argue that this accident was caused by the misuse of the product by appellant/decedent as well as to suggest that the notice contained on the truck itself warning workers against standing outside the truck while it was moving in excess of 10 miles per hour or travelling more than two-tenths of a mile, was appropriate. Moreover, appellant's argument that this court erred by allowing the questioning of witnesses regarding the responsibility of training of decedent's co-workers suggesting negligence is meritless. As stated previously, appellant herself suggested that both decedent and his co-workers were forced to use a roll bar as there was no other location for them to stand while the truck was in motion. The fact that the truck, according to appellee, contained a warning advising individuals such as decedent and his co-workers from standing anywhere other than on the side step called into question whether or not decedent or his co-workers knew of the warning or were trained to use the side step. Once again these issues deal with causation which is an element to be proven even in a strict product liabilities case.

*3. The Court Erred When It Refused To Grant a Mistrial, or Give Curative Instructions, Following Opening Statements Where Defense Counsel Made Improper Statements and Conducted Himself Improperly During Opening Statements In the Following Regards*

(a) Defense counsel twice challenged plaintiff's counsel to make inquiries of a defense expert which would

have been violative of a pretrial order precluding reference to ANSI standards, industry standards, consensus standards and negligence issues.

(b) Defense counsel suggested in opening statements that the plaintiff's harm resulted from the negligence of the driver of the subject trash truck.

(c) Defense counsel improperly suggested during opening statements that plaintiff's harm resulted from plaintiff's decedent's comparative negligence in riding on the rear of the truck and in disregarding a warning label on the side of the truck.

Appellants argued that this court erred in refusing to grant a mistrial or give jury instructions following opening statements made by appellees' counsel. Appellants contend that during appellees' opening argument, he twice challenged appellants' counsel to question his expert in such a manner that would have been violative of this court's pretrial order precluding references to industry standards or negligence issues in general. Upon review of the record, this court did not find at the time and does not find now that appellees' comments were violative of this court's pretrial order in that such comments did not make reference to any industry standards nor negligence issues. Further, defense counsel's suggestion in his opening remarks that appellant/decedent's death resulted from the negligence of the driver of the trash truck is similarly without merit. Although this court did enter a pretrial order precluding issues of negligence, this did not preclude appellees from arguing issues involving causation, thereby permitting them to argue that the accident was caused solely by the actions of appellant/decedent or by one of his co-workers. In addition, appel-

lants argue that appellees' counsel improperly suggested in his opening remarks that decedent's death resulted from his comparative negligence from riding on the rear of the truck and in disregarding a warning label on the side of the truck. As set forth previously, although comparative negligence plays no law in a strict products liability case, issues surrounding causation and assumption of risk were certainly permissible and appellees' counsel's opening comments regarding this were not violative of this court's pretrial order.

*4. The Court Erred by Allowing Questioning of Gary Beam, and Answers to Those Questions, Regarding Ongoing Activities, Use of the Product, and Upper Chichester Workers' Continued Use of the Roll Bar As a Step During a Period of Approximately Four Years After Plaintiff's Death. The Court Further Erred by Permitting Questioning and Responsive Statements Regarding Those Ongoing Activities During the Testimony of James Myers*

Appellant argues that this court erroneously permitted appellees' counsel to question decedent's co-worker, Gary Beam, regarding ongoing post-accident use of the subject product, including the continuing use of the "roll bar" as a step during a period of approximately four years following decedent's death. Appellant argues that this court erred in permitting this line of questioning both of this witness and of decedent's co-worker, James Myers. It should be noted that appellant elicited testimony during trial that Upper Chichester Township subsequently had installed cameras on the trucks as a means to help with problems occurring in and around the trash truck. Certainly this permitted the appellees to inquire as to

whether or not workers continued to use the "roll bar" as a step subsequent to decedent's death and subsequent to the installation of the cameras.

*5. The Trial Court Erred by Allowing Questioning of Witness James Myers Regarding Hearsay Statements Included Within the Fire Investigator's Report, and by Allowing Publication of the Fire Investigator's Report (Defense Exhibit 34, Identified During Trial As Document 1253) to the Jury*

Appellant argues that this court erred in permitting James Myers to testify regarding hearsay statements included within the fire investigator's report, and by allowing publication of this report to the jury. It should be noted that the fire investigator's report prior to this point in time of the trial had been discussed without objection from either party before the examination of Mr. Meyers. Therefore, appellant having not objected, waived any objection to the fire investigator's report. This court therefore permitted the publication of the fire investigator's report as well as permitting Mr. Myers to testify as to its contents, which this court ruled were not hearsay statements.

*6. The Court Erred by Refusing Throughout the Trial to Rule on Plaintiff's Objections, Merely Stating Instead That the Objections Would Be "Noted," Thus Giving No Guidance to the Parties and Effectively Overruling Plaintiff's Numerous Objections by Allowing Witnesses To Testify Over the Objections*

Appellant's counsel contends that this court did not rule on many of its objections, merely stating that his

objections would be "noted." This court during trial dealt with a plethora of objections from both counsel. When these objections became voluminous, this court, rather than continually stating that the objections were overruled and instructing the witness to answer, merely advised counsel that his objection was "noted," meaning that his objection was overruled, but it was clearly noted for the record. It was not this court's intention to refuse to rule on the objection but was in fact ruling on it in an abbreviated fashion which this court determined would assist in moving the trial along as well as indicating the fact that the objection was overruled.

### 7. The Court Erred by Failing To Charge the Jury Regarding Lay Opinion Testimony in Accord With Standard Civil Jury Instruction 5.25

Appellant argues that this court failed to charge the jury regarding lay opinion testimony in accord with Standard Civil Jury Instruction 5.25. This court in its extensive charge to the jury set forth what effect any testimony in the trial should have on their determination, including the use of lay or expert witnesses. This court had previously ruled that Mr. Morgan's testimony was admissible, and thus this court's instructions following trial on issues of testimony and evidence of credibility, specifically gave the jury adequate instructions as to lay opinion and the weight to which they should give to both it and all testimony and evidence produced at trial.

*8. The Court Erred by Refusing To Charge the Jury on the "Heeding Presumption," 8.03B of Pennsylvania Standard Civil Jury Instructions, As Testimony Elicited at Trial Revealed That There Was No Warning Provided on the Rear of the Truck. Alternatively, the Court Charged on 8.03C, Which Was Improper Since That Charge Suggested That the Jury Find for the Defense if They Believed That Plaintiff Would Not Have Heeded the Warning Had It Been Given*

Appellant argues that this court erred by refusing to charge the jury on the "heeding presumption" which is contained in 8.03B of the Pennsylvania Standard Jury Instructions. Appellants allege that there was no warning provided on the rear of the truck and thus the heeding presumption charge should have been given. However, Appellee did produce evidence at trial that there was a warning label on the rear of the truck, setting forth that individuals such as appellant/decedent should be riding on the side step. Alternatively, appellants argue that it was improper for this court to charge on 8.03O since that charge suggested that the jury find for the defense if they believe that appellant had not heeded the warning had it been given. It was appellant's position during trial that the warning provided to appellant's decedent was not proper, and in light of all the circumstances, failed to give adequate warning. Thus, this court determined that in charging the jury, in the event the jurors determined that the warning was inadequate or not given, could still find for the defense if they believed that appellant/decedent would not have heeded the warning if it had been given.

*9. The Court Erred by Refusing to Re-charge the Jury on Strict Liability Law and Burdens of Proof, Despite the Fact That the Jury Submitted a Question to the Court and Requested That the Court Re-Charge on Those Issues During Deliberation*

Appellant argues that this court erred by refusing to re-charge the jury on strict liability law and burdens of proof in light of the fact that jury submitted a question during their deliberations to the court requesting that the court re-charge on these issues. It is within the sound discretion of the trial court as to whether to re-charge the jury on a particular issue when said request is made by the jury during its deliberations. As a result, this court, in using its discretion, decided to let the jury's recollection control.

*10. The Court Erred in Permitting Questioning and Responsive Testimony During Mr. Bloch's Testimony Regarding the Speed Limit on the Roadway on Which Plaintiff and his Co-Workers Were Going To Travel Had the Accident Not Happened*

Appellants finally contend that this court erred in permitting questioning and responsive testimony by Mr. Block regarding the speed limit on the roadway on which appellant/decedent and his co-workers were going to travel had the accident not occurred. It was appellees' contention that the subject trash truck was travelling in excess of 10 miles per hour on the date of the accident, and thus the warning on the back of the truck stating that workers should be in the cab if it were travelling in excess of 10 miles per hour would have been in effect. It was appellees' contention that the driver of the subject ve-

hicle was moving in excess of 10 miles per hour in light of what its next stop was going to be. It should be noted that there was testimony brought forth by appellant that appellant/decedent's co-worker, Mr. Beam, was unable to get the attention of the trash truck driver once a fire was noted to have occurred in the back of the truck. Mr. Beam testified that he was waving his arms and yelling at the driver to stop and apparently the driver was unable to hear him. Therefore, it was appellees' contention that evidence of the inability of Mr. Beam to get the attention of his driver, as well as the fact that the next stop was further than two-tenths of a mile, were indicative of the fact that the truck was travelling in excess of 10 miles an hour and was going to be travelling in excess of two-tenths of a mile. Both of these contentions required, according to the warnings placed on the back of the truck, that employees such as appellant/decedent should be in the cab, not on the back of the truck. Therefore, it was this court's determination that evidence pertaining to speed and roadway conditions in which appellant/decedent and his co-workers were about to travel was relevant to the issue of the speed and distance to be travelled by the vehicle.

## CONCLUSION

For all of the above reasons, this court's order of December 7, 2009 denying appellant's post-trial motion for a new trial should be affirmed.